IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| JOHNNY FORD, *et al.*, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) CASE NO. 2:13-CV-214-WKW |
| | ) [WO] |
| LUTHER STRANGE, | ) |
| individually and in his official | ) |
| capacity as Attorney General | ) |
| for the State of Alabama, *et al.*, | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

Before the court is Plaintiffs' Motion for Leave to File Amended Complaint. (Doc. # 39.) Defendants filed briefs in opposition to the motion (Docs. # 41, 42), and Plaintiffs filed a reply brief (Doc. # 45). The motion is due to be denied on the ground of futility.

**I. STANDARD OF REVIEW**

Federal Rule of Civil Procedure 15(a)(2) provides that "[t]he court should freely give leave when justice so requires." The court need not permit an amendment, however, "where amendment would be futile." *Corsello v. Lincare, Inc.*, 428 F.3d 1008, 1014 (11th Cir. 2005). A proposed amendment to the complaint "is futile when the complaint as amended would still be properly dismissed." *Cockrell v. Sparks*, 510 F.3d 1307, 1310 (11th Cir. 2007).

When evaluating a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court takes the complaint's allegations as true and "construe[s] them in the light most favorable to" the plaintiff. *Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1321–22 (11th Cir. 2012). To survive Rule 12(b)(6) scrutiny, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[F]acial plausibility" exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.*

## II. BACKGROUND

The original Complaint's claims did not survive scrutiny under Federal Rules of Civil Procedure 12(b)(1) and (b)(6) for the reasons stated in a separate Memorandum Opinion and Order also entered today. That opinion lays out the background of this case and will not be repeated here except to the extent necessary.

Briefly, in 2003, the majority of voters in Macon County voted in favor of a local constitutional amendment for the legalization of charitable bingo games in their county, which became Amendment No. 744 to the Alabama Constitution. Promptly

thereafter, VictoryLand opened an electronic bingo facility in Macon County called Quincy's 777 Casino.[1]  Plaintiffs allege that beginning in 2010, Defendants engaged in a series of impermissible actions – *i.e.*, raided VictoryLand and seized all of its electronic bingo machines under the guise that they were slot machines, and usurped the Macon County sheriff's authority vested in him by Amendment No. 744 to regulate charitable bingo in his county – with the goal of shutting down VictoryLand's electronic bingo facility.  In the original Complaint, Plaintiffs alleged that those actions, which ultimately were successful in achieving Defendants' goal in 2013, negated Plaintiffs' votes cast nearly ten years earlier in favor of Amendment No. 744, required preclearance under § 5, and racially discriminated against African-Americans' voting rights, in violation of §§ 2 and 5 of the Voting Rights Act and the Thirteenth, Fourteenth, and Fifteenth Amendments to the United States Constitution. Defendants moved for dismissal of the claims in the Complaint, and those claims collapsed under Rule 12(b)(1) and Rule 12(b)(6) review.  (*See* Doc. # 46 (Mem. Op. & Order granting Defendants' motions to dismiss).)

During the pendency of Defendants' motions to dismiss the Complaint, Plaintiffs moved to amend the Complaint to increase the number of Plaintiffs from six to fourteen and to add three claims.  Plaintiffs want eight additional parties to join

---

[1] VictoryLand is not a party to this lawsuit.

3

their side, namely, Macon County Sheriff David Warren, the Macon County Commission, the City of Tuskegee, the Utilities Board of the City of Tuskegee, the Macon County Water Authority, the Tuskegee Repertory Theatre, the Macon County Board of Education, and the Macon County Racing Commission.  The proposed Amended Complaint also omits Count 1, which is the § 5 claim previously dismissed as wholly insubstantial and completely without merit (Doc. # 35),[2] and renumbers Counts 2, 3, and 4 as Counts 1, 2, and 3, respectively.

      Plaintiffs also propose to add Counts 4, 5, and 6, all of which are titled, "Denial of Due Process of Law."  The new proposed Count 4 alleges that Defendants denied Plaintiffs, as well as all other African-American citizens who "supported" Amendment No. 744, "their constitutional right to vote without due process of law" and to "equal protection as guaranteed by the First, Fifth, Thirteenth, Fourteenth, and Fifteenth Amendments to the United States Constitution." (Proposed Am. Compl. ¶ 171.)  They bring Count 4 pursuant to 42 U.S.C. §§ 1981 and 1983.  In particular, Plaintiffs allege that Defendants intentionally nullified their votes in favor of Amendment No. 744, their votes for their then-representative Ford who sponsored the bill that eventually became Amendment No. 744, and their votes for Sheriff Warren.  (Proposed Am.

---

[2] It is presumed that the reference to violations of § 5 in paragraph 2 of the proposed Amended Complaint was inadvertent.  In any event, Plaintiffs do not bring a count for a violation of § 5, and they present no argument to revive such a claim.

4

Compl. ¶ 171a–d.)  Plaintiffs further allege that the shutdown of VictoryLand denied Plaintiffs and all Macon County citizens who voted in favor of Amendment No. 744 "economic power to use the vote in order to obtain economic benefits."  (Proposed Am. Compl. ¶ 171 f.)

The new proposed Count 5 alleges a racially motivated conspiracy among Defendants to deny Plaintiffs "their property right to contract, or to own, operate, and maintain a bingo business in Macon County, Alabama without due process of law as guaranteed by the First, Fifth, Thirteenth, and Fourteenth Amendments to the United States Constitution."  (Proposed Am. Compl. ¶ 174.)  The new Count Five is brought pursuant to 42 U.S.C. §§ 1981, 1983, and 1985.  (Proposed Am. Compl. ¶ 174.) Plaintiffs expound that Defendants substituted their bingo rules for those promulgated by Sheriff Warren, "arbitrarily and capriciously remove[d]" Sheriff Warren as the "rule-making authority" and appointed in his stead Attorney General Strange, "materially chang[ed] the definition of bingo, so as to eliminate electronic bingo machines," and impermissibly "close[d] the charities' bingo business," while at the same time, permitted the Poarch Creek Indians and Greenetrack in Greene County to conduct electronic bingo.  (Proposed Am. Compl. ¶ 174a–g.)

The new proposed Count 6 alleges that through the actions described in the new Counts 4 and 5, Defendants "negligently allowed . . . the civil and constitutional rights

5

of . . . Plaintiffs and the class they represent to be infringed upon[,] injuring Plaintiffs and causing Plaintiffs monetary damages and other injuries," in violation of 42 U.S.C. § 1986. (Proposed Am. Compl. ¶ 177.)

Moreover, the proposed Amended Complaint sets out ten new paragraphs outlining the alleged economic devastation the closure of VictoryLand has had on Macon County. (Proposed Am. Compl. ¶¶ 139–48.) It also adds allegations in Count 3 that Attorney General Strange "has not operated in an even-handed manner" or "exercised fairness in his actions against" Plaintiffs. (Proposed Am. Compl. ¶ 169.) The proposed Amended Complaint otherwise incorporates claims and allegations previously alleged in the original Complaint.

### III. DISCUSSION

Defendants argue that the proposed Amended Complaint fares no better than the original Complaint. They argue that the amendment is futile because Rule 12(b)(6) still requires the Amended Complaint's dismissal. Defendants provide specific arguments as to why Plaintiffs' proposed Amended Complaint should not be allowed. Plaintiffs do not address these specific arguments, but rather respond only with general contentions to the effect that "if given an opportunity they will be able

6

to prove their allegations." (Doc. # 45, at 11.)[3] But Plaintiffs cannot prove what they cannot even plausibly allege. There are myriad reasons why the proposed Amended Complaint fails to state a claim. Here are some of the reasons why.

### A.     Due Process:  Generally (Counts 4 & 5)

Counts 4 and 5 of the proposed Amended Complaint allege violations of "due process of law" under the First, Fifth, Thirteenth, and Fifteenth Amendments (in addition to the Fourteenth Amendment). The First Amendment, the Thirteenth Amendment, and the Fifteenth Amendment do not contain a due process clause, however. The Fifth Amendment's Due Process Clause applies to the federal government, but only state governmental action is at issue in this case. *See Jordan v. Mosley*, 298 F. App'x 803, 886 n.5 (11th Cir. 2008); *see also Buxton v. Plant City*, 871 F.2d 1037, 1041 (11th Cir. 1989) ("The fifth amendment to the United States Constitution restrains the federal government, and the fourteenth amendment, section 1, restrains the states, from depriving any person of life, liberty, or property without due process of law.").

Accordingly, the claims in Counts 4 and 5 based upon violations of due process rights under the First, Fifth, Thirteenth, and Fifteenth Amendments clearly are subject

---

[3] While Plaintiffs accuse Defendants of raising "Rule 12(b)(6) motions in disguise" (Doc. # 45, at 10), a proposed amendment to a complaint that cannot survive Rule 12(b)(6) review is futile. *Cockrell*, 510 F.3d at 1310.

7

to dismissal under Rule 12(b)(6). Allowing an amendment of these claims, therefore, would be futile.

**B.     Equal Protection (Count 4)**

Although Count 4 of the proposed Amended Complaint is titled "Denial of Due Process of Law," it includes a cursory mention of "a denial of the equal protection guaranteed" by the Fourteenth Amendment. (Proposed Am. Compl. ¶ 36; *see also* Proposed Am. Compl. ¶ 169 (adding that Attorney General Strange "has not operated in an even-handed manner").) To state a claim for an equal protection violation, Plaintiffs must allege, among other things, that they were "treated differently from others who were similarly situated." *Metro. Atlanta Task Force for the Homeless v. City of Atlanta, Ga.*, 503 F. App'x 867, 869 (11th Cir. 2013) (citing *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (per curiam)). A similarly situated comparator is one who is "*prima facie* identical in all relevant respects." *Campbell v. Rainbow City, Ala.*, 434 F.3d 1306, 1314 (11th Cir. 2006).

In the separate Memorandum Opinion and Order granting Defendants' motion to dismiss the claims in the original Complaint, the court explained why the allegations in the original Complaint did not plausibly allege an equal protection claim. The proposed Amended Complaint's additional allegations do not rectify those pleading deficiencies so as to allege a plausible equal protection claim. While the

original Complaint arguably focused on the Indian-operated electronic bingo casinos as the comparators, the proposed Amended Complaint references both Indian-run casinos and Greenetrack, an electronic bingo facility in Greene County.[4] The mention of Greenetrack in a different count alleging a due process violation, however, does not save the equal protection claim in Count 4 for at least two reasons.

First, no Plaintiff is an electronic bingo facility. Any comparison between an electronic bingo facility and any Plaintiff stumbles at the starting gate for the reasons set forth in the Memorandum Opinion and Order dismissing the claims in the original Complaint. Those reasons are incorporated here and do not require further discussion.

Second, the proposed Amended Complaint alleges that Attorney General Strange did, in fact, execute a search warrant at Greenetrack in Greene County and seize its electronic bingo machines, but that a state circuit judge later set aside the warrant and required the return of those machines. (Compl. ¶¶ 91, 94 (Ex. 40).) According to the allegations, if Greenetrack is offering electronic bingo, then it is not

---

[4] Count 4, the only count that uses the words "equal protection," does not hint as to what allegations demonstrate different treatment of a similarly situated comparator. Count 5, which is labeled a due process claim, includes an allegation that Defendants "have permitted" Greenetrack in Greene County "to use the same machines [as those that were used at VictoryLand] or similar machines to operate bingo." (Am. Compl. ¶¶ 106, 169, 174g.) Notwithstanding Greenetrack's mention in Count 5, there is no factual basis to support or even suggest that Plaintiffs are similarly situated to Greenetrack.

because Defendants did not try to stop it.[5]  Moreover, as to other Alabama counties where local constitutional amendments control the operation of charitable bingo gaming, the exhibits attached to Plaintiffs' Complaint suggest that Attorney General Strange has treated other casinos equally, not differently, in the enforcement of Alabama's anti-gambling laws.  (*See, e.g.*, Compl., Exs. 30, 31, 32 (agreements between the state attorney general and vendors concerning the removal of their electronic bingo machines from facilities in Macon County, Lowndes County, and Houston County and noting that the electronic bingo machines seized in Greene County were subject to civil forfeiture proceedings).)

In sum, there are no plausible allegations in Count 4 or elsewhere in the proposed Amended Complaint[6] that Plaintiffs have "been intentionally treated differently from others similarly situated." *Olech*, 528 U.S. at 564.  Leave to amend the Complaint to add an equal protection claim in Count 4 would be futile.

---

[5] It is notable also for the comparison analysis that Greene County's constitutional amendment defines "bingo" as including an "electronic marking machine."  Ala. Const. amend. No. 743; *see also Barber v. Cornerstone Cmty. Outreach, Inc.*, 42 So. 3d 65, 80 (Ala. 2009) (recognizing the Greene County local constitutional amendment as "the only amendment in Alabama . . . that makes any reference to the use of electronic equipment of any form").  To the contrary, the word "electronic" does not appear in Macon County's Amendment No. 744; it only later appeared in the sheriff's rules and regulations.  *See* Ala. Const. amend. No. 744.

[6] While a complaint's grounds for relief must include more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action," *Twombly*, 550 U.S. at 555, the proposed Amended Complaint does not even include these pleading formalities.

C.     **Right to Vote (Count 4)**

Count 4 also appears to attempt to revive a constitutional voting rights claim, but that attempt is futile. The proposed Amended Complaint, like the original Complaint, still lacks allegations of actions bearing a direct relation to voting. The allegations provide far too tenuous a connection between the claims of unlawful actions and an injury affecting Plaintiffs' voting rights. Accordingly, an amendment to reintroduce a constitutional voting rights claim would be futile.

D.     **Due Process & Conspiracy (Count 5)**

Count 5 alleges claims under §§ 1981, 1983, and 1985. In support of their claims under §§ 1981 and 1983, Plaintiffs allege a deprivation of "property right[s] to contract, or to own, operate, and maintain a bingo business in Macon County, Alabama without due process of law" in violation of the Fourteenth Amendment. (Proposed Am. Compl. ¶ 174.) In support of their claim under § 1985, Plaintiffs allege that Defendants engaged in a racially motivated conspiracy to deprive them of property without due process of law under the Fourteenth Amendment. (Proposed Am. Compl. ¶ 174.)

"To state a claim for the denial of property without due process of law, the plaintiff must allege (1) deprivation of a constitutionally protected property interest;

11

(2) governmental action; (3) and constitutionally inadequate process."[7] *Miccosukee Tribe of Indians of Fla. v. United States*, 716 F.3d 555, 559 (11th Cir. 2013) (citing *Grayden v. Rhodes*, 345 F.3d 1225, 1232 (11th Cir. 2003)). A § 1985(3) claim has three elements[8]: "(1) a conspiracy, (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy, (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States." *Trawinski v. United Techs.*, 313 F.3d 1295, 1299 (11th Cir. 2002) (quotation marks omitted).

### 1. § 1981/§ 1983

Defendants argue that Count 5 does not state a plausible due process claim for failure to allege constitutionally inadequate process. The arguments rely in part on the holding of *Lord Abbett Municipal Income Fund, Inc. v. Tyson*, 671 F.3d 1203 (11th Cir. 2007). In *Lord Abbett*, the plaintiff purchased municipal bonds that were subject to repayment based upon fees generated from electronic bingo gaming at a facility in Dothan, Alabama. The plaintiff alleged that Alabama state officials' threats to seize

---

[7] "[Section] 1983 constitutes the exclusive federal remedy for violation by state actors of the rights guaranteed under § 1981." *Bryant v. Jones*, 575 F.3d 1281, 1288 n.1 (11th Cir. 2009).

[8] The proposed Amended Complaint does not specify upon which subsection of § 1985 Plaintiffs rely, but § 1985(3) offers the only legal theory potentially applicable. In any event, Plaintiffs fail to allege any specific facts that would support a conspiracy claim under any subsection of 42 U.S.C. § 1985.

the electronic bingo machines at this gaming facility (which ultimately resulted in the gaming facility's closure) interfered with its property interest in the bonds and the income the plaintiff would have obtained from those bonds. *See id.* at 1207 & n.4. The plaintiffs further alleged that the State of Alabama had a due process obligation to provide it a pre-seizure hearing on the legality of the electronic bingo equipment. *Id.* at 1206. The Eleventh Circuit disagreed.

"The government's seizure of suspected contraband [*i.e.*, the electronic bingo machines] would grind to a halt if every entity that had an economic interest in the targeted property was owed a hearing before the government could lawfully seize the property." *Id.* at 1208. The Eleventh Circuit "ha[d] no trouble concluding that the due process clause d[id] not afford an entity without an ownership interest [in the suspected contraband] a hearing in the face of threatened seizure." *Id.* It concluded that "the due process clause does not require states to afford those who seek to profit from potentially criminal enterprises a hearing to establish the legality of the enterprise before state officers have begun a prosecution or forfeiture action." *Id.* Because the complaint did not allege facts demonstrating any entitlement to a pre-seizure hearing, the Eleventh Circuit held that the complaint failed to allege "constitutionally inadequate process" in connection with the seizure of electronic bingo machines from the Alabama casino. *Id.* at 1207.

13

Based upon the foregoing principles, the due process claim in Count 5 would fail Rule 12(b)(6) review because the proposed Amended Complaint does not allege constitutionally inadequate process. To begin with, the proposed Amended Complaint alleges at various junctures that Plaintiffs suffered deprivations of property rights "without due process of law." (*See, e.g.*, Proposed Am. Compl. ¶¶ 2, 171, 174.) But the proposed Amended Complaint does not allege what process Plaintiffs believe they were due or include a request in the prayer for relief for any type of hearing or other process with respect to the deprivation of their alleged property interests. The omission of allegations of what process is due is, in and of itself, a fatal pleading deficiency. *See Miccosukee Tribe of Indians of Fla.*, 716 F.3d at 559 (affirming Rule 12(b)(6) dismissal of a procedural due process claim where the complaint "contain[ed] no allegation of the process the Tribe claims was due, much less that it was inadequate").

*Lord Abbett* further demonstrates the due process claim's pleading deficiencies with respect to allegations of constitutionally inadequate process. Plaintiffs allege, similar to what the *Lord Abbett* plaintiff alleged, that Defendants' actions culminating in the seizure of the electronic bingo machines from VictoryLand interfered with their alleged property rights arising from the operation of electronic bingo and its attendant

14

economic gains.[9]  (Proposed Am. Compl. ¶ 140 (alleging that Plaintiffs have lost "millions of dollars" in bingo revenues in Macon County).)  Plaintiffs further allege, in effect, that Defendants deemed VictoryLand's electronic bingo operations a potentially unlawful enterprise and engaged in all manner of activities to halt electronic bingo operations at VictoryLand.  (Proposed Am. Compl. ¶¶ 85–101.)

The proposed Amended Complaint makes no request for any type of process, further obscuring the nature of the claim, but it does generally allege that Defendants had no right to engage in any actions that would interfere in electronic bingo operations at VictoryLand.  And the fundamental premise for that contention is Plaintiffs' belief that the electronic bingo operations at VictoryLand were legal under Alabama law.  As *Lord Abbett* makes clear, however, such allegations fail to demonstrate an entitlement to a pre-seizure hearing for a determination of the machines' legality.  Plaintiffs do not attempt to distinguish their position from the plaintiff's in *Lord Abbett*; Plaintiffs here also hold no ownership interest in the

---

[9] Those economic gains take various forms.  For example, some Plaintiffs – the nonprofit organizations – had bingo licenses through which they received millions of dollars in electronic bingo revenues from VictoryLand's operations.  (Proposed Am. Compl. ¶ 140.)  Other Plaintiffs held leadership positions in those nonprofit organizations.  (Proposed Am. Compl. ¶¶ 5, 6, 7.)  One Plaintiff earned his living working at VictoryLand's electronic bingo facility.  (Proposed Am. Compl. ¶ 147.)  Other Plaintiffs derived substantial monetary sums in taxes from electronic bingo gaming revenues.  (Proposed Am. Compl. ¶¶ 142, 144.)  Two Plaintiffs obtained significant revenues from VictoryLand, which was their biggest consumer of utilities and water usage.  (Proposed Am. Compl. ¶¶ 143, 145.)  And one Plaintiff (the sheriff) "received over $1 million . . . in revenue and contributions" as a result of VictoryLand's electronic bingo operations.  (Proposed Am. Compl. ¶ 146.)

electronic bingo machines or in VictoryLand, and they endeavor to profit from what the State of Alabama deems a "potentially criminal enterprise[ ]." *Lord Abbett*, 671 F.3d at 1208. Without allegations plausibly showing constitutionally inadequate process, the procedural due process claim would fail Rule 12(b)(6) review and its proposed addition to the Complaint would be futile.

### 2. *§ 1985(3)*

Section 1985(3) is not itself a source of substantive rights. "'[I]t merely provides a remedy for violation of the rights it designates.'" *Dickerson v. Alachua Cnty. Comm'n*, 200 F.3d 761, 766 (11th Cir. 2000) (citation and internal quotation marks omitted). Where the § 1985(3) claim is based on the same theory as the underlying § 1981/§ 1983 claim and the underlying claim fails, the § 1985(3) claim must also fail.

Here, the § 1985(3) conspiracy depends upon the plausibility of the underlying Fourteenth Amendment due process claim. Because the underlying claim upon which the § 1985(3) claim is based would not survive a motion to dismiss, the § 1985(3) also would not.

### 3. *Summary*

Based on the foregoing, neither the § 1981/§ 1983 Fourteenth Amendment due process claim nor the § 1985(3) conspiracy claim can survive Rule 12(b)(6) scrutiny. An amendment of the Complaint to add Count 5, therefore, would be futile.

### E. § 1986 Conspiracy (Count 6)

The new proposed Count 6 alleges a cause of action under § 1986, which imposes liability against anyone who has "knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 . . . , are about to be committed, and having the power to prevent or aid in preventing the commission of the same, neglects or refuses so to do." 42 U.S.C. § 1986. Defendants' arguments of futility with respect to Count 6 focus on the derivative nature of § 1986 and Eleventh Amendment immunity as to any claim for monetary damages, and those arguments are legally sound.

Section 1986 "claims are . . . derivative of § 1985 violations." *Park v. City of Atlanta*, 120 F.3d 1157, 1159–60 (11th Cir. 1997). "To state a § 1986 claim, the plaintiff must show that the defendant knew of a § 1985 conspiracy and failed to prevent it, despite having the power to do so." *Palette v. Yellow Jacket Marina, Inc.*, 395 F. App'x 549, 555 (11th Cir. 2010).

Plaintiffs allege no plausible facts demonstrating a § 1985 conspiracy on the part of anyone or that Defendants had knowledge of any such conspiracy. Because a cognizable § 1986 claim requires a viable § 1985 claim, the proposed Amended Complaint necessarily fails to state individual- or official-capacity claims upon which relief can be granted under § 1986. Moreover, to the extent Plaintiffs sue Defendants

17

in their official capacities for monetary damages under § 1986 (*see* Proposed Am. Compl. ¶¶ 1, 177), the Eleventh Amendment bars that claim. *See Jackson v. Ga. Dep't of Transp.*, 16 F.3d 1573, 1579 (11th Cir. 1994) ("Because the Eleventh Amendment bars from federal court an action seeking money damages from a state, a damages suit against state officials or employees in their official capacities . . . is also barred."). In short, Plaintiffs' proposed amendment to add Count 6 would be futile.

F.      **Counts 4, 5, and 6, and the *Pennhurst* Problem**

Governor Bentley also contends that Counts 4, 5, and 6 raise Eleventh Amendment immunity concerns because the "fundamental premise" of these claims is that Defendants violated Amendment No. 744. (Bentley's Resp. to Mot. to Amend Compl., at 8.) Governor Bentley points to paragraph 3 of the proposed Amended Complaint, which accuses him of entering an executive order that allegedly made Attorney General Strange a "new *de facto* regulator of bingo" contrary to Amendment No. 744's designation of the sheriff as the regulator of charitable bingo in Macon County. (Proposed Am. Compl. ¶ 3.) He asserts that what Plaintiffs really are alleging is that Defendants violated state constitutional law and that the Eleventh Amendment precludes relief for the alleged violation. Governor Bentley persuasively illustrates the proposed Amended Complaint's *Pennhurst* problem.

18

In *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89 (1984), the Supreme Court held that the Eleventh Amendment deprives federal courts of jurisdiction to order a state official to comply with state law. *See id.* at 121; *see also id.* at 106 ("[I]t is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law."). The proposed Amended Complaint focuses extensively on the history and purpose of Amendment No. 744 and its delegation of authority to the Macon County sheriff to promulgate and enforce rules and regulations governing charitable bingo in his county. (*See, e.g.*, Proposed Am. Compl. ¶¶ 45–56.) It also is replete with allegations that Governor Bentley, as well as Attorney General Strange, has engaged in actions that directly contravene Amendment No. 744. (*See, e.g.*, Proposed Am. Compl. ¶¶ 2, 3, 99, 101, 166, 167.) While the proposed Amended Complaint stops short of expressly requesting an injunction that Defendants act in conformity with Amendment No. 744 (as Plaintiffs interpret Amendment No. 744), the requested relief is disguised, and barely so, to achieve that aim. Namely, if, as Plaintiffs request, Defendants are enjoined from implementing statewide policies that interpret Alabama's anti-gambling laws as prohibiting the type of electronic bingo machines that patrons played at VictoryLand prior to its 2013 closure, and if Defendants are enjoined "from conducting further police raids on bingo operations in Macon County"

(Proposed Am. Compl., at 40 (prayers for relief)), then undoubtedly electronic bingo games could resume at VictoryLand without interference from Defendants, given the sheriff's prior approval of such games. This in effect would mean that Amendment No. 744 would function exactly how Plaintiffs think it should, that is, consistent with the Macon County sheriff's previous proclamation that "electronic bingo machines in operation at VictoryLand compl[y] with [Amendment No. 744] and the Sheriff's Regulations and are not slot machines or illegal gambling devices." (Proposed Am. Compl. ¶ 114.) In short, Plaintiffs are in reality attempting to coerce state officials into conforming with state law. Accordingly, the Eleventh Amendment would bar the relief requested. Permitting an amendment to add Counts 4, 5, and 6 would be futile.

## IV. CONCLUSION

Based upon the foregoing, Plaintiffs' Motion for Leave to File Amended Complaint is futile because the proposed Amended Complaint cannot withstand a motion to dismiss. Accordingly, it is ORDERED that the motion (Doc. # 39) is DENIED.

DONE this 23rd day of December, 2013.

                                     /s/ W. Keith Watkins
                                CHIEF UNITED STATES DISTRICT JUDGE